BEFORE THE FIRST DIVISION, APRIL 20, 1950

**No. 54251.**—Eitinger Bead Co., Inc., and Lawrence Frankel & Co. *v.* United
States, protests 134681–K and 134921–K (New York).

OLIVER, Chief Judge:   The merchandise involved in the suits at bar consists
of certain gold- and silver-colored hollow glass round articles imported from
Czechoslovakia and entered at the port of New York.   They were assessed for
duty at 60 per centum ad valorem under paragraph 218 (f), Tariff Act of 1930,
as decorated blown glass articles.   Several claims are made but the one prin-
cipally relied on by the importers is that the articles in question are properly
dutiable at the rate of 35 per centum ad valorem under paragraph 1503, Tariff
Act of 1930, as "beads   *   *   *   not specially provided for."
   The pertinent provisions of the involved paragraphs of the tariff act are as
follows:

PAR. 218. (f)   Table and kitchen articles and utensils, and all articles of every
description not specially provided for, composed wholly or in chief value of glass,
blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched,
frosted, gilded, ground (except such grinding as is necessary for fitting stoppers
or for purposes other than ornamentation), painted, printed in any manner, sand-
blasted, silvered, stained, or decorated or ornamented in any manner, whether
filled or unfilled, or whether their contents be dutiable or free, 60 per centum
ad valorem.
   PAR. 1503.   Spangles and beads,   *   *   *   not specially provided for, 35
per centum ad valorem;   *   *   *.

Official samples of the merchandise in question were received in evidence as plaintiffs' exhibits 1 and 2 (R. 2). Plaintiffs' exhibit 1 consists of globular blown glass beads, colored gold and silver, 6 millimeters in size. Plaintiffs' exhibit 2 consists of hollow glass beads, colored gold, of 6- and 7-millimeter dimensions, and described on invoice item No. 64852 in protest 134921–K as "Mass glass beads gold."

Two witnesses testified for the plaintiffs. The sales manager for one of the importers stated that he had bought and sold beads and was familiar with beads of all varieties and their uses for about 30 years. The witness testified that the beads represented by plaintiffs' exhibit 1 are composed of hollow glass; that they are imported on strings; that in his experience they have always been strung (R. 4). He stated that the plaintiffs use some of them for manufacturing purposes. To illustrate the use of hollow glass beads of this kind in the manufacture of dress ornaments, the plaintiffs offered and there was received in evidence plaintiffs' illustrative exhibit 3, consisting of a number of beads strung together with a hole completely through them. The witness stated that these small round articles are imported strung and after importation are taken apart and then sewn on the material and used as ornaments on dresses (R. 5). In their imported condition, the articles are perforated and the "hole is right through them" in the same condition as the sample. He testified that based on his experience he considered exhibit 1 to be a bead; that these beads are generally used in the manner indicated by plaintiffs' illustrative exhibit 3, which is used both in millinery ornaments and on dresses, and which are crocheted on whatever article is being manufactured (R. 6). On cross-examination, the witness stated he had never seen them used as Christmas-tree ornaments.

Plaintiffs' second witness, who was also connected with one of the importers herein, testified that he was familiar with the importation represented by exhibit 2 and that the beads therein are imported "strung per mass"; that there are usually 50 of these glass articles on a string and a "mass" consists of 24 such strings, and that they are sold in the same way. The witness stated that the involved articles are used either for millinery ornaments or sewed or embroidered on dresses as ornaments and that their use is similar to the use of spangles (R. 8). He had personally seen these articles used for embellishing millinery ornaments and dresses. There was further received in evidence as illustrating a sample of these ornaments, plaintiffs' illustrative exhibit 4, which is 7 millimeters in size and which is used in the same manner as a 6-millimeter bead. The witness testified that the involved beads were used in the same manner as plaintiffs' illustrative exhibit 4, and that he had never seen articles that small, in 6-millimeter or 7-millimeter sizes, used on Christmas trees as ornaments.

The testimony of the plaintiffs' witnesses was not contradicted or disputed, and the defendant offered no evidence to overcome the proof submitted by the plaintiffs herein that the imported articles are "beads."

Counsel for both parties agreed that the issue for determination here is whether the articles are "beads" (R. 2). Dictionary definitions of beads supply the following:

Webster's New International Dictionary, Second Edition, 1948:

bead, n. 2. a A small perforated ball strung with others, * * *. b A similar ball or polyhedron used on fabrics or as jewelry in strings.

Funk & Wagnalls New Standard Dictionary, 1942:

bead, n. 1. *A little perforated* sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration. [Italics ours.]

It has been held that the scope of paragraph 1503, Tariff Act of 1930, embraces beads of various sizes. *Eitinger Bead Co., Inc.* v. *United States*, 8 Cust. Ct. 502, Abstract 47109. See also *United States* v. *General Transport Co..* 22 C. C. P. A. 446, T. D. 47440. The samples before us, which are potent witnesses, indicate that the merchandise in question falls squarely within the definitions of beads as given by lexicographic authorities.

On this record and an examination of the samples in evidence we hold the involved merchandise to be properly dutiable under paragraph 1503, Tariff Act of 1930, at the rate of 35 per centum ad valorem as "beads," not specially provided for, as claimed. The protests are sustained. Judgment will issue accordingly.